Filed 10/28/22  Wyatt v. Kern High School District CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JERALD WYATT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KERN HIGH SCHOOL DISTRICT,<br><br>Defendant and Appellant. | F081049<br><br>(Kern Super. Ct.<br>No. BCV-19-101320)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on October 27, 2022, be modified as follows:

1. The first full paragraph on page 12 that begins: "KHSD objected to the court's consideration" is deleted and replaced with the following:

    KHSD objected to the court's consideration of item 1 above on two grounds: (1) the request does not attach the trial court's ruling from which the proffered facts and findings may be ascertained; and (2) the court may not take judicial notice of the truth of those proffered facts or findings.

2. On page 12, the last sentence of the second full paragraph is deleted and replaced with the following:

    Accordingly, we deny Wyatt's request as to item 1.

3. On page 12, in the first sentence of the third full paragraph, the words "item d." are deleted and replaced with "item 4."

4. In the third and fourth full sentences on page 13, the words "item d." are deleted and replaced with "item 4."

5. On page 13, the first full paragraph that begins "We grant the remainder of Wyatt's request" is deleted and replaced with the following:

> We grant the remainder of Wyatt's request for judicial notice – i.e., items 2 and 3, above.

Except for the modifications set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

POOCHIGIAN, J.

WE CONCUR:

HILL, P. J.

FRANSON, J.

Filed 10/27/22  Wyatt v. Kern High School District CA5 (unmodified opinion)
Opinion following rehearing

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JERALD WYATT,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KERN HIGH SCHOOL DISTRICT,<br><br>    Defendant and Appellant. | F081049<br><br>(Kern Super. Ct.<br>No. BCV-19-101320)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Lozano Smith, Sloan R. Simmons, Jenell Van Bindsbergen, and Junaid Halani for Defendant and Appellant.

Swanson O'Dell and Seth O'Dell; Carpenter Zuckerman & Rowley and Robert J. Ounjian; Rodriguez & Associates, Daniel Rodriguez, Chantal Trujillo, Joel Andreesen, Joseph Whittington, and Victoria Harp for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

At issue in this matter is whether certain records maintained by appellant Kern High School District (KHSD) and pertaining to respondent Jerald Wyatt, a police officer

formerly employed by KHSD, are subject to disclosure in response to requests made in 2019, pursuant to the California Public Records Act (Gov. Code, § 6250 et seq.) (CPRA).

KHSD maintains a police department. In early 2019, KHSD received several CPRA record requests from various news agencies and others seeking information concerning KHSD officer involved events including records pertaining to (1) the discharge of a firearm at a person by an officer; (2) the use of force by an officer resulting in death or great bodily injury; (3) sustained findings an officer engaged in sexual assault involving a member of the public; and (4) sustained findings of dishonesty-related misconduct by an officer. Upon receipt of the CPRA requests, KHSD notified Wyatt that it had identified "documents from [Wyatt's] personnel file responsive to these requests" (subject records).[1]

Prior to January 1, 2019, access to such records was only permitted through a *Pitchess*[2] motion brought pursuant to Evidence Code sections 1043 and 1045. With the passage of Senate Bill No. 1421 (2017–2018 Reg. Sess.) in 2018 ("2018 amendments"), Penal Code sections 832.7 and 832.8 were amended to allow disclosure of such records pursuant to a CPRA request under specified circumstances. (Former Pen. Code, § 832.7, subd. (b)(1), Stats. 2018, c. 988, § 2) (Senate Bill 1421).[3]

Wyatt petitioned the Kern County Superior Court for a writ of mandate, temporary restraining order, and preliminary injunction seeking to enjoin KHSD from disclosing the subject records in response to the CPRA requests. Wyatt argued, among other things, the

---

[1] Public records filed by Wyatt reveal the subject records relate to purported "sustained" findings involving alleged dishonesty—one of the enumerated categories in the CPRA requests. KHSD does not contend the subject records are responsive to any other enumerated category contained in the CPRA requests.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] Penal Code section 832.7 was amended again in 2021 ("2021 amendments"). (Assem. Bill No. 474 (2021–2022 Reg. Sess.) § 339; Sen. Bill No. 16 (2021–2022 Reg. Sess.) § 3; Sen. Bill No. 2 (2021–2022 Reg. Sess.) § 5.5.) We discuss the 2021 amendments in a later section of this opinion.

subject records did not relate to "sustained" findings as defined in subdivision (b) of Penal Code section 832.8, because Wyatt was never notified of the findings or afforded an "opportunity for an administrative appeal pursuant to Sections 3304 and 3304.5 of the Government Code."

The trial court granted Wyatt's petition, ordered the issuance of a writ of mandate, and issued an injunction prohibiting disclosure of the subject records.

KHSD appeals from the order granting the writ of mandate and injunction and denying KHSD's motion for reconsideration, and from the judgment entered pursuant to said order. On July 11, 2022, we issued an opinion in this appeal, affirming, in part, and reversing, in part, the aforementioned judgment and order. Thereafter, we granted KHSD's petition for rehearing, having determined our partial reversal was premised on recently enacted Senate Bill No. 16 (2021–2022 Reg. Sess., § 3) (Senate Bill 16), which the parties did not have an opportunity to address by way of supplemental briefs. Consequently, we vacated the submission of the matter and the July 11, 2022 opinion filed by this court.

The parties have now had the opportunity to brief the effect of Senate Bill 16 on the matters at issue. Having reviewed and considered the record, the parties' original and supplemental briefs, and related filings, we affirm, in part, and reverse, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual and Procedural Background Leading to Appeal

Wyatt was previously employed by KHSD as a peace officer in the KHSD police department. While Wyatt was employed by KHSD, an internal affairs (IA) investigation was opened into certain allegations involving Wyatt.

At some point, either during the course of the IA investigation or before its initiation, Wyatt had gone on paid medical leave. Acting Police Chief of the KHSD Police Department, Ed Komin, made several requests that Wyatt sit for an interview in connection with the IA investigation but, each time, Wyatt's attorneys notified Komin

3.

that Wyatt was unavailable to be interviewed due to his medical condition. Wyatt was notified that if he failed to appear for the interviews, the IA investigation would be finalized "without the benefit of [Wyatt's] participation and potential disciplinary action for insubordination."

Wyatt exhausted his paid medical leave as of May 12, 2017. He was notified that "he would be placed on 12-weeks of FMLA leave unless he was medically able to return before that time." On June 16, 2017, Wyatt declined to be put on FMLA leave and requested he be retroactively placed on the 39-month rehire list effective May 12, 2017.[4] He indicated his decision and request to be placed on the 39-month rehire list was "NOT A RESIGNATION."

By the time the IA investigation was completed on June 30, 2017, KHSD no longer considered Wyatt an active KHSD employee due to Wyatt's statutory election to be placed on a 39-month reemployment list. The true status of Wyatt's employment with KHSD at or about the time of the IA investigation was, and is, in dispute and was the subject of separate litigation at the time KHSD filed its appeal in this matter.[5]

---

[4] Education Code section 45192 provides, in part: "When all available leaves of absence, paid or unpaid, have been exhausted and if the employee is not medically able to assume the duties of his or her position, the employee shall, if not placed in another position, be placed on a reemployment list for a period of 39 months. When available, during the 39-month period, the employee shall be employed in a vacant position in the class of the employee's previous assignment over all other available candidates except for a reemployment list established because of lack of work or lack of funds, in which case the employee shall be listed in accordance with appropriate seniority regulations." (Ed. Code, § 45192, subd. (g).)

[5] In its publicly filed ruling on KHSD's motion for reconsideration, the trial court wrote: "There is a dispute between the parties as to whether [Wyatt's] employment was terminated by [KHSD], or by [Wyatt's] resignation. That issue is apparently the subject of other litigation…. Nothing in this ruling or the court's prior ruling should be viewed as a determination by this court regarding the 'constructive termination v. resignation' issue."

4.

In November of 2017, Wyatt requested he be permitted to review his KHSD personnel records. He made the request because he had "been offered a position with the Kern County [District Attorney's] Office as an Investigator," and it was about to conduct a background investigation of Wyatt. Wyatt suspected "KHSD may have placed erroneous [IA] or disciplinary information in [his] file in an attempt to dissuade any Law Enforcement agencies from hiring [him]." Wyatt's request was granted.

Upon conducting a review of his personnel records, Wyatt "observed some interesting notations … made on some of the documents, indicating 'Per Tenile.' "[6] Wyatt requested documents related to the notations and "located an envelope which was labeled as an IA investigation." Among the documents contained in the envelope was an "IA findings document … that listed two sustained IA allegations … for 'Misuse of [CLETS]'[7] and 'Dishonesty.' " Wyatt contends he was "never … informed nor notified of any [such] findings."

Within days of Wyatt's review of his files, a Kern County District Attorney Investigator (D.A. Investigator) reviewed Wyatt's personnel files as part of the D.A. Investigator's background investigation into Wyatt. As noted in his publicly filed declaration, the D.A. Investigator "specifically sought information from [Wyatt's personnel] file that would relate to dishonesty or any Sustained [IA] findings and [he] found none to be contained within [Wyatt's] file."

Seventeen months later, on April 25, 2019, KHSD notified Wyatt by letter that it had received "multiple [CPRA requests] related to the investigation and discipline of peace officers employed by" the KHSD police department "pursuant to [Senate Bill] 1421." The letter stated, "[KHSD] has reviewed its files and has located documents from [Wyatt's] personnel file responsive to these requests" (i.e., the subject records).

---

[6] No explanation of these notations is provided in the record.

[7] CLETS is an acronym for the California Law Enforcement Telecommunications System. (See Gov. Code, § 15150 et seq.)

5.

The letter indicated that, unless Wyatt provided KHSD "with a copy of an appropriate court-issued protective order precluding" production of the subject records, KHSD intended to produce them in response to the CPRA requests.

On May 14, 2019, Wyatt filed an ex parte application for a writ of mandamus, temporary restraining order (TRO), and order to show cause for a preliminary injunction to enjoin KHSD's release of the subject records (a "reverse-CPRA action"[8]) and for related relief. On or about May 28, 2019, Wyatt amended his petition. The relief sought by Wyatt in his amended petition was for a TRO, preliminary injunction, and permanent injunction "enjoining [KHSD] from releasing the [subject] records … in response" to the CPRA requests; for alternative and peremptory writs of mandate so enjoining KHSD; for alternative and peremptory writs of mandate "commanding [KHSD] to remove any documents from [Wyatt's] file … not placed there in accordance with [Government] Code [section] 3300 et seq. and after a determination from an adjudicated hearing[;]" and for a hearing "pursuant to [Government] Code Section 3309.5[9] so that a factual determination may be made … regarding the actual nature of the documents in question and their appropriate legal classification pursuant to … Penal Code Section 832.8(b)."

On May 30, 2019, the trial court granted a TRO prohibiting KHSD from releasing the subject records under the CPRA, issued an alternative writ of mandate, and set a

---

[8] "A mandamus action initiated by an interested party designed to prevent disclosure of public records falling under an exemption to the disclosure requirements provided in the [CPRA] is commonly referred to as a reverse-CPRA action." (*National Conference of Black Mayors v. Chico Community Publishing, Inc.* (2018) 25 Cal.App.5th 570, 575, fn. 2.)

[9] Subdivision (d)(1) of Government Code section 3309.5 provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

hearing date and briefing schedule for the parties. A formal order to that effect was filed on June 24, 2019.

The hearing on Wyatt's writ petition went forward on August 2, 2019. A minute order of that same date noted the matter was "heard and argued by counsel," "[KHSD] personnel records for … Wyatt [were] submitted to the Court for in camera review," and the "[m]atter stands submitted to the Court."

On August 23, 2019, the trial court granted Wyatt's petition. The ruling stated, "[KHSD] and its agents are enjoined and restrained from disclosing the subject records in response to requests under the [CPRA]. A writ of mandate will issue commanding [KHSD] to: (1) refrain from treating the subject records as 'relating to an incident in which a sustained finding was made,' and (2) respond to persons making CPRA requests consistent with this decision." The court directed Wyatt to "prepare a proposed order, injunction and writ," ruled on [KHSD's] objections to the declarations submitted in support of Wyatt's petition, and noted the court had "reviewed in camera a total of 77 pages" of subject records. (Italics omitted.)

In its August 23, 2019, ruling, the trial court found, among other things, that (1) Wyatt "is a peace officer formerly employed by respondent KHSD," (2) during the period February 5, 2019, to May 1, 2019, KHSD received CPRA requests from several parties seeking "records subject to disclosure under Penal Code [section] 832.7(b)," (3) "KHSD identified records pertaining to [Wyatt] that it deemed responsive to the requests …, and notified [Wyatt] of its intent to disclose them," (4) Wyatt "had no opportunity for an administrative appeal," and (5) Wyatt had notice of the IA investigation and " 'ultimately became aware that a determination had been made' " [as a result of his November 2017 review of his personnel files]. These findings do not appear to be in dispute.

The trial court determined KHSD was "not relieve[d] … of its obligation to give proper notice of a 'final determination' [to Wyatt] if one had been made." The court

7.

stated, "Placing a 'memo to file' among other records – there one moment [Nov. 28], and gone the next [Nov. 30] – was not sufficient" to provide such notice.[10] The court ruled "[t]he subject records relate to an incident for which there was no 'sustained finding' within the meaning of Penal Code [section] 832.7 [subdivision] (b), and are therefore confidential and exempt from disclosure under state law," citing Government Code section 6254, subdivision (k)[11] and Penal Code section 832.7, subdivision (a).[12]

On September 9, 2019, KHSD moved the trial court to reconsider its ruling. In its motion, KHSD argued that, in connection with the prior hearing of Wyatt's petition, KHSD was prohibited from disclosing, in open court, certain material facts related to Wyatt's employment and the IA investigation without violating Wyatt's privacy interests. KHSD requested that the court "enter a new order allowing for a closed hearing for consideration of the necessary facts, or allow [KHSD] to submit additional facts under seal." Wyatt opposed the motion to reconsider and argued no "new" facts, circumstances, or law were being presented to the trial court.

On October 18, 2019, the trial court continued the hearing on KHSD's motion to reconsider to December 18, 2019. It ordered the hearing closed to the public and authorized the parties to file supplemental briefs under seal.[13] All further briefs and declarations filed by the parties in connection with the proceedings were filed under seal.

---

[10] The trial court's comment appears to refer to the fact that the IA findings and related documents were available to Wyatt upon review of his personnel files but were not similarly available to the D.A. Investigator.

[11] Subject to certain exceptions not relevant here, subdivision (k) of Government Code section 6254 exempts from disclosure under the CPRA "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).)

[12] In its August 23, 2019, ruling, the trial court also stated, "Nothing in this decision is intended as a finding that [Wyatt] did, or did not, commit a wrongful act or omission during his employment with … KHSD."

[13] Similar orders were issued on appeal. On January 21, 2021, KHSD moved for leave to file redacted and confidential versions of its respondent's brief and appellant's

On December 24, 2019, the trial court issued its ruling to deny the motion for reconsideration.  In its ruling, the court stated, "[KHSD] has presented the court with additional information in the motion for reconsideration, specifically, that [Wyatt] was no longer employed with [KHSD] at the time [KHSD] made a determination on the matter under [IA] investigation.  [KHSD] argues that [Wyatt] had no right to an appeal because the subject finding was made *after* [Wyatt] resigned, citing *Haight v. City of San Diego* ('*Haight*') (1991) 228 Cal.App.3d 413.  [Wyatt] contends that he was 'coercively forced out of his position,' and that '*Haight* has absolutely nothing to do with sustained findings….' " (Fn. omitted.)  Consistent with its prior ruling, the court determined "[t]he subject records relate to an incident for which there was no 'sustained finding' within the meaning of Penal Code [sections] 832.7 [subdivision] (b) and 832.8 [subdivision] (b), and are therefore confidential and exempt from disclosure under state law."

On March 11, 2020, the trial court issued its order granting Wyatt's application for a peremptory writ of mandate and injunctive relief.  On April 9, 2020, KHSD appealed the court's March 11, 2020, order.  That same day, April 9, 2020, the court issued its judgment in the matter consistent with its prior rulings.  Specifically, the judgment adjudged and decreed "[t]he [s]ubject [r]ecords are confidential and exempt from disclosure under state law, in accordance with Government Code section 6254(k) and Penal Code section 832.7(a)."  It further provided, in part, "[a] peremptory writ of mandate shall issue from this Court commanding [KHSD] to (a) refrain from treating the [s]ubject [r]ecords as 'relating to an incident in which a sustained finding was made'; [and] (b) respond to persons making requests under the [CPRA] consistent with this

appendix.  The motion was unopposed.  On February 16, 2021, this court granted KHSD's motion and further authorized the filing of a redacted and confidential version of its reply brief, if any.  On June 10, 2021, Wyatt filed a similar motion to file a redacted and confidential respondent's brief.  The motion was granted on June 11, 2021.  In light of these orders and our disposition of this matter, we limit our discussion of facts to those available in the public record.  The public record contains a sufficient recitation of relevant facts in support of our decision.

Judgment."  The judgment also "enjoined and restrained [KHSD] from disclosing the subject records in response to requests under the CPRA."  On April 23, 2020, the court issued a peremptory writ of mandate consistent with the judgment.

Wyatt served notice of entry of the judgment on April 28, 2020.  On May 13, 2020, KHSD timely appealed the judgment.

## II.     Procedural Matters Pertaining to Petition for Rehearing

### A.     *KHSD's Request for Judicial Notice*

KHSD requested we take judicial notice of the following documents pursuant to Evidence Code sections 452 and 459, and California Rules of Court, rule 8.252:

1.     "A report and analysis prepared by the Senate Rules Committee for [Senate Bill 16]" dated September 1, 2021;

2.     "A report and analysis prepared by the Assembly Committee on Judiciary for [Senate Bill 16]" dated July 6, 2021;

3.     "A summary of the Senate Third Reading for [Senate Bill 16]" dated August 30, 2021;

4.     "The online docket and register of actions in *Lopeteguy et al. v. Kern High School District et al.*, Kern County Superior Court Case No. BCV-17100576 …" (wrongful termination lawsuit) in which Wyatt is a plaintiff;

5.     "The online docket and register of actions in *Valdez and Wyatt v. Kern High School District et al.*, Kern County Superior Court Case No. BCV-17-102617" (whistleblower retaliation lawsuit) which was consolidated with the wrongful termination lawsuit;

6.     A Notice of Settlement filed in the wrongful termination lawsuit;

7.     A Notice of Settlement filed in the whistleblower retaliation lawsuit;

8.     A July 27, 2022, ruling published by the trial court in the wrongful termination lawsuit; and

9.     A copy of a July 22, 2022 CPRA request for the subject records (July 2022 records request).

Wyatt objected to the KHSD's request for judicial notice on the sole ground it was not timely filed.  KHSD's request for judicial notice (like that of Wyatt discussed below) was received by the clerk of this court on September 8, 2022, and was filed on September 9, 2022.  Both requests were timely received.

We grant KHSD's request for judicial notice in its entirety.

**B.     *Wyatt's Request for Judicial Notice***

Wyatt requested we take judicial notice of the following facts and documents pursuant to Evidence Code sections 452, subdivisions (c), (d) and (h), and 459:

1.     Various facts purportedly offered in support and opposition of summary judgment motions in the consolidated wrongful termination/whistleblower retaliation lawsuits, and the trial court's purported findings that triable issues of fact remain with respect to Wyatt's various claims;

2.     Documents related to Wyatt's Application for Adjudication of Claim (unnecessary capitalization omitted) filed with the Workers' Compensation Appeals Board for the State of California (case No. ADJ 106688655) in connection with Wyatt's alleged injuries suffered as a result of his employment with KHSD, including:

      a.     Wyatt's application for adjudication of his claim;

      b.     Wyatt's claim form;

      c.     Wyatt's declaration pursuant to Labor Code section 4906(g); and

      d.     Wyatt's authorization for venue in Bakersfield, California.

3.     A Notice of Settlement of Entire Case in the whistleblower retaliation lawsuit; and

4.     Wyatt's verified petition for a writ of mandate and complaint for injunctive, declaratory and related relief in the matter styled *Wyatt v. Kern High School District*, Kern County Superior Court case No. BCV-22-101918, filed in said court on August 1,

11.

2022. By way of the petition, Wyatt seeks to preclude the disclosure of the subject records pursuant to the July 2022 records request.

KHSD objected to the court's consideration of item a. above on two grounds: (1) the request does not attach the trial court's ruling from which the proffered facts and findings may be ascertained; and (2) the court may not take judicial notice of the truth of those proffered facts or findings.

Judicial notice of matters specified in Evidence Code section 452 is only compulsory if the requesting party "[f]urnishes the court with sufficient information to enable it to take judicial notice of the matter." (Evid. Code, § 453, subd. (b).) Wyatt requested this court take judicial notice of 30 purported facts offered to, and 10 purported findings made by, the trial court but failed to provide the supporting trial court documents. Moreover, given the statements of the trial court, as characterized by Wyatt, have no res judicata or collateral estoppel effect, we are unable to take judicial notice of the truth of any such statements even if supported by documentation. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1560–1563.) Accordingly, we deny Wyatt's request as to item a.

KHSD objected to the court's consideration of item d. above – i.e., Wyatt's petition for writ of mandate filed to prohibit disclosure of subject records pursuant to the July 2022 records request – on grounds "there has never been any summons issued or served in that case" and "claims within the … petition … that go beyond a reverse-PRA claim are presumably barred under the parties' pending settlement of in [the wrongful termination and whistleblower retaliation lawsuits] and/or are barred by the doctrine of collateral estoppel or res judicata vis-à-vis the underlying case here, Case No. BCV-19-101320."

KHSD does not provide any authority or argument as to why a court may not take judicial notice of a writ petition simply because the summons may not have been issued or served, and we aware of none. Similarly, KHSD does not identify, and does not

12.

provide any analysis concerning, which claims it contends are barred by the doctrine of collateral estoppel and res judicata. In addition, we have no information as to the terms of the settlement referenced by KHSD in its objection. However, it appears that KHSD only objects to the extent claims in the writ petition exceed those that are directed toward prohibiting disclosure of subject records in response to the July 2022 records request. Accordingly, we grant judicial notice of Wyatt's request as to item d., above, only to the extent it shows a pending action to prohibit such disclosure. We deny the request as to all other matters contained in item d. on the ground they are irrelevant to our disposition. (*AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313, fn. 2 (*AL Holding*) ["court must decline to take judicial notice of material that is not relevant"].)

We grant the remainder of Wyatt's request for judicial notice – i.e., items b. and c. above.

## DISCUSSION

### I.     Standard of Review

The parties disagree as to the proper standard of review. KHSD contends the trial court's rulings and judgment should be reviewed de novo because a question of statutory interpretation is presented, and the facts are not in dispute. Wyatt argues the trial court's issuance of an injunction must be viewed under an abuse of discretion standard, and "even in the statutory writ method of reviewing CPRA cases other than reverse-CPRA matters, the standard of review would not be de novo, but rather would utilize the independent judgment test." Both parties are correct, in part, and the disagreement among them is minimal.

"Issues of statutory construction as well as the application of that construction to a particular set of facts are questions of law." (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492.) We review questions of law independently and "decide them without deference to the decision made below." (*Ibid*.) "Questions of fact are reviewed by giving deference to the trial court's decision." (*McGhan Medical Corp. v. Superior*

13.

*Court* (1992) 11 Cal.App.4th 804, 809.)  A factual finding will be accepted on appeal if supported by substantial evidence.  (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739.)

" 'To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo.' "  (*Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, 738.)  Here, the facts we deem relevant to resolution of the issues on appeal do not appear to be in dispute.[14]

With regard to Wyatt's contention that "the statutory writ method of reviewing CPRA cases other than reverse-CPRA matters" calls for utilization of the "independent judgment test," we make two comments.  First, as discussed in part II.A. of this opinion, a "reverse-CPRA action" is not authorized under the CPRA.  Rather, it falls within the category of traditional mandate.  Second, although there are differences between a de novo and independent standard of review, where, as here, the relevant facts are undisputed, no testimony was provided, and no credibility determinations were made, "independent review is the equivalent of de novo review."  (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1021.)

Wyatt is correct, however, that the granting of a preliminary (or permanent) injunction is reviewed for abuse of discretion.  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390 [permanent injunction]; *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1300 [preliminary injunction and permanent injunctions under Government Code section 3309.5]; *Amgen Inc. v. California Correctional Health Care Services* (2020) 47 Cal.App.5th 716, 731 [preliminary injunction in reverse-CPRA action].)  A trial court

---

[14] As mentioned, we acknowledge the parties dispute the proper characterization of Wyatt's separation from his employment at KHSD.  We address that issue in section IV, *post*, of this opinion.

14.

abuses its discretion if its decision "rests on an error of law." (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 742.)

## II.  Procedural Objections

### A.  *KHSD Has a Right to Appellate Review of the Judgment*

Wyatt contends this appeal must be dismissed because KHSD "has no right to appeal an adverse judgment under the CPRA."  KHSD argues, however, that successful reverse-CPRA actions do not fall within the scope of Government Code section 6259. We agree with KHSD.

Wyatt relies on Government Code section 6259 which provides, in relevant part:

> "In an action filed on or after January 1, 1991, an order of the court, either *directing disclosure by a public official or supporting the decision of the public official refusing disclosure*, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ. Upon entry of any order pursuant to this section, a party shall, in order to obtain review of the order, file a petition within 20 days after service upon the party of a written notice of entry of the order, or within such further time not exceeding an additional 20 days as the trial court may for good cause allow…."  (Gov. Code, § 6259, subd. (c), italics added.)

Wyatt's position on the correct means of obtaining appellate review of the trial court's decision is at odds with the plain language of Government Code section 6259. Subdivision (c) of section 6259 is limited in its application to orders that either "direct[] disclosure" of records pursuant to the CPRA or "support[] the decision of the public official refusing disclosure."  (Gov. Code, § 6259, subd. (c).)  The judgment in this case does neither.  Rather, it prohibits disclosure and disapproves KHSD's decision to disclose the subject records.

In *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 (*Marken*), the court noted the CPRA statutory scheme does not authorize or address reverse-CPRA actions.  (*Id.* at p. 1267.)  "[A]lthough the CPRA provides a specific

statutory procedure for the resolution of disputes between the party seeking disclosure and the public agency, no comparable procedure exists for an interested third party to obtain a judicial ruling precluding a public agency from improperly disclosing confidential documents." (*Ibid.*; see Gov. Code, § 6258 [providing a procedure to enforce a person's "right to inspect or to receive a copy of any public record or class of public records" but not to prohibit disclosure].) Thus, the method for obtaining judicial review of a judgment in a reverse-CPRA action is not governed by the CPRA.

"An order granting or denying a petition for writ of mandate that disposes of all of the claims between the parties is an immediately appealable final judgment." (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 190, fn. omitted.) The judgment in this case disposed of all issues between the parties. Accordingly, it is a final judgment (Code Civ. Proc., § 1064) and may be appealed under Code of Civil Procedure section 904.1. (Code Civ. Proc., § 904.1, subd. (a)(1); *Bergeson*, at p. 190.)

Based on the foregoing, we conclude KHSD's appeal is a proper procedural vehicle to obtain appellate review of the judgment and the order upon which it was premised.[15]

## B. *KHSD Has Standing to Appeal*

Wyatt contends KHSD lacks standing to bring this appeal. We disagree.

---

[15] Even if we were to assume a writ of mandate is the proper means of obtaining appellate review of the judgment, KHSD correctly notes that this court may treat an otherwise improper appeal as a petition for an extraordinary writ where "(1) the briefs and record contain in substance all the elements prescribed … for an original mandate proceeding and (2) there are extraordinary circumstances justifying the exercise of that discretionary power." (*Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001, 1006.) Those elements are met here. The briefs and record comply with rule 8.486 of the California Rules of Court pertaining to appellate writ petitions, and circumstances justify resolution of the matter on appeal – i.e., the case involves novel issues of public interest that are likely to recur; absent a right of appeal KHSD would have no adequate remedy at law; and the notices of appeal were filed within the statutory time frame for seeking writ review. (See *Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1225.)

16.

The right to appeal a civil case is codified at Code of Civil Procedure section 902, which provides, in relevant part: "Any party aggrieved may appeal in the cases prescribed in this title." (Code Civ. Proc., § 902.) "[S]ection 902 is a remedial statute, which should be 'liberally construed,' with 'any doubts resolved in favor of the right to appeal.' " (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540 (*Ajida*).)

Wyatt cites to *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 for the proposition that "[a] party is legally 'aggrieved' for appellate purposes only if his or her 'rights are injuriously affected by the judgment' " and that "[t]he rights or interests 'injuriously affected' must be 'immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."

Wyatt contends KHSD is not aggrieved by the judgment – only the news agencies that requested the subject records are aggrieved. Wyatt contends KHSD is not aggrieved because only the requesting parties, not KHSD, are being denied access to the subject records – i.e., KHSD already has the subject records in its possession.

KHSD counters that it is aggrieved because the judgment is binding on it, and "will bind and otherwise inform the KHSD's actions in substantially future matters." In support of its position, KHSD cites to a line of cases that hold "[a] person who would be bound by the doctrine of res judicata, whether or not a party of record, is a party sufficiently aggrieved to entitle him to appeal." (E.g., *Leoke v. County of San Bernardino* (1967) 249 Cal.App.2d 767, 771; *Life v. County of Los Angeles* (1990) 218 Cal.App.3d 1287, 1292; *Estate of Sloan* (1963) 222 Cal.App.2d 283, 291–292; *Harris v. Alcoholic Beverage Controls Appeals Board* (1966) 245 Cal.App.2d 919; *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 58; *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295.)

We think *Koehn v. State Board of Equalization* (1958) 50 Cal.2d 432 (*Koehn*), and similar cases are particularly instructive. *Koehn* stands for the proposition that a writ of

17.

mandamus issued to a state agency may be challenged by the agency. (*Id.* at pp. 435–436.) The rule was stated in the early case of *Simpson v. Police Court of Riverside* (1911) 160 Cal. 530 (*Simpson*), in which the plaintiff, a holder of a promissory note, brought suit against the defendant, the maker of the note. (*Id.* at p. 531.) The action was brought in the police court established by the charter for the City of Riverside. (*Ibid.*) The defendant demurred on the ground the police court lacked jurisdiction to decide the matter. (*Ibid.*) The police court overruled the demurrer, and the defendant then sought and obtained a writ of prohibition from the superior court prohibiting the police court from taking further action in the matter. (*Ibid.*) The police court appealed. (*Ibid.*)

Noting that the police court was "not a party to the action" between the litigants, *Simpson* held the police court has "a right to appeal from any judgment against it prohibiting it from proceeding in that action, and has a right to be relieved from any writ improperly issued so prohibiting it." (*Simpson*, *supra*, 160 Cal. at p. 532.) In reiterating the rule set forth in *Simpson*, the *Koehn* court, citing numerous cases, wrote, "The rule of the *Simpson* case has been followed and accepted without discussion or criticism in later cases which determined on the merits an appeal taken by a tribunal from a judgment granting a writ which would have the effect of limiting or impairing the jurisdiction of the tribunal *or of controlling its functioning*." (*Koehn*, *supra*, 50 Cal.2d at p. 435, italics added.) We conclude KHSD, as the agency whose actions are enjoined, has standing to appeal the judgment.

Our conclusion is further supported by the recognition that, in a reverse-CPRA action, the requesting party or parties need not participate in the litigation and may, instead, "elect to allow the agency itself to defend its decision" to release records. (*Marken*, *supra*, 202 Cal.App.4th at p. 1268.) It would be an anomaly to confer standing on KHSD to defend its decision to release the subject records in the superior court (and, by doing so, essentially serve as a proxy for the requesting parties) but to deny it the right to appeal upon receiving an unfavorable judgment. The policy of liberally construing

Code of Civil Procedure section 902 and resolving doubts "in favor of the right to appeal" militates in favor of recognizing KHSD's standing to appeal. (*Ajida*, *supra*, 87 Cal.App.4th at p. 540.)

## III. The Subject Records Do Not Relate to Sustained Findings Under the 2018 Amendments to Penal Code Sections 832.7 and 832.8

### A. *Relevant Penal Code Provisions*

In this section of our opinion, we consider whether the subject records relate to "sustained" findings under the 2018 amendments to Penal Code sections 832.7 and 832.8, so as to make the records subject to disclosure under the CPRA.

Penal Code sections 832.7 and 832.8, and related statutes "were enacted to codify the California Supreme Court decision in *Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531, … which permitted discovery of police officer files on a proper showing of materiality, relevance and necessity, and to curtail record shredding and discovery abuses that allegedly occurred in the wake of the *Pitchess* decision. [Citation.] [¶] The *Pitchess* statutory scheme recognizes that evidence contained in a law enforcement officer's personnel file may be relevant in a lawsuit, but that the officer 'has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily.' " (*Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1085.)

Immediately prior to the 2018 amendments, Penal Code section 832.7 prohibited disclosure of peace officer and custodial officer personnel records and certain other related records maintained by state and local agencies except when obtained through law and motion procedures identified in Evidence Code sections 1043 and 1046. In 2018, the California Legislature passed Senate Bill 1421 to amend section 832.7. The 2018 amendments became effective January 1, 2019, and allowed disclosure of a specified subset of such records pursuant to a CPRA request.

19.

At the time the CPRA requests were made in 2019, the version of Penal Code section 832.7 then in effect provided, in relevant part:

"(a) Except as provided in subdivision (b), the personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office.

"(b)(1) *Notwithstanding subdivision (a), subdivision (f) of Section 6254 of the Government Code, or any other law, the following peace officer or custodial officer personnel records and records maintained by any state or local agency shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act* (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code):

"(A) A record relating to the report, investigation, or findings of any of the following:

"(i) An incident involving the discharge of a firearm at a person by a peace officer or custodial officer.

"(ii) An incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury.

"(B)(i) Any record relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency that a peace officer or custodial officer engaged in sexual assault involving a member of the public.

"[¶] … [¶]  (C) Any record relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or

20.

concealing of evidence." (Former Pen. Code, § 832.7, subds. (a), (b)(1).) (Stats. 2018, c. 988 (Sen. Bill 1421), § 2, italics added.)

The term "sustained" as used in Penal Code section 832.7 is (and, at the time of the CPRA requests, was) defined in Penal Code section 832.8, as follows:  " 'Sustained' means a final determination by an investigating agency, commission, board, hearing officer, or arbitrator, as applicable, *following an investigation and opportunity for an administrative appeal pursuant to Sections 3304 and 3304.5 of the Government Code*, that the actions of the peace officer or custodial officer were found to violate law or departmental policy." (Pen. Code, § 832.7, subd. (b), italics added.)

## B.     *Public Record Disclosure Under the CPRA*

"The CPRA, codified at [Government Code] section 6250 et seq., provides for the inspection of public records maintained by state and local agencies." (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal. App. 4th 810, 822.) Government Code section 6250 provides:  "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, §  6250.)  " 'Disclosure of public records thus involves two fundamental yet competing interests: (1) prevention of secrecy in government; and (2) protection of individual privacy.' " (*Gilbert v. City of San Jose* (2003) 114 Cal.App.4th 606, 610 (*Gilbert*).)

"The CPRA 'includes two exceptions to the general policy of disclosure of public records: (1) materials expressly exempt from disclosure pursuant to [Government Code] section 6254 …; and (2) the "catchall exception" of [Government Code] section 6255, which allows a government agency to withhold records if it can demonstrate that, on the facts of a particular case, the public interest served by withholding the records clearly outweighs the public interest served by disclosure.' " (*Gilbert*, *supra*, 114 Cal.App.4th at pp. 610–611.)

Citing article I, section 3 of the California Constitution, KHSD contends this court must broadly construe the CPRA in favor of disclosure. Said Constitutional provision reads, in relevant part:

> "(b)(1) The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.

> "(2) A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access…." (Cal. Const. art I, § 3, subd. (b)(1), (b)(2).)

Wyatt counters by noting said Constitutional provision also provides:

> "Nothing in [subdivision (b)] supersedes or modifies the right of privacy guaranteed by Section 1 or affects the construction of any statute, court rule, or other authority to the extent that it protects that right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer." (Cal. Const. art. I, § 3, subd. (b)(3).)

## C.     *The Parties' Competing Construction of Provisions of the CPRA and Penal Code*

In Wyatt's amended petition to the trial court, he contended the subject records did not meet the definition of "record[s] relating to an incident in which a sustained finding was made," as used in Penal Code section 832.7, because he was never given notice of the determination or an opportunity to be heard.

KHSD argues it was not required to provide Wyatt an administrative opportunity to appeal because Wyatt "voluntarily separated from his employment with the [KHSD]." KHSD's argument is premised largely on the language of Government Code section 3304 which provides, in part: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required … *without*

22.

*providing the public safety officer with an opportunity for administrative appeal.*"  (Gov. Code, § 3304, subd. (b), italics added.)  KHSD contends the "right to administrative appeal under [Government Code] section 3304, subdivision (b), arises only for 'a peace officer against whom disciplinary action is taken ….' "  In its motion for reconsideration, KHSD argued, "a right to an administrative appeal does not attach to a finding of an investigation until a decision regarding discipline has been made."  In essence, KHSD argues Wyatt's separation of employment precluded KHSD from imposing professional discipline against Wyatt and, as a result, there was no need for KHSD to provide Wyatt with notice and an opportunity for administrative appeal.  KHSD contends Wyatt's voluntary separation of employment from KHSD effectively waived his right to any administrative appeal.

KHSD also contends Wyatt "had the opportunity to challenge the findings against him … after receiving actual notice of them in November 2017, which he again failed to do,"[16] citing *Murden v. County of Sacramento* (1984) 160 Cal.App.3d 302, 312 (*Murden*).  The argument that Wyatt had such an opportunity does not appear to have been raised in the trial court.  " ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." … Such arguments raised for the first time on appeal are generally deemed forfeited.' "  (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.)  Moreover, KHSD does not articulate what administrative (or other) process it contends would have been available to Wyatt to challenge the IA findings.  Even if this contention was preserved on appeal, the mere citation to *Murden* in support of the statement, without any substantive discussion of how it applies, is

---

[16] KHSD's choice of wording to suggest that Wyatt "*again*" failed to challenge the IA findings is perplexing.  We are unable to discern from the record what is meant by the term "*again*."

insufficient to properly present the issue to this court.[17] (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument … allows this court to treat the contentions as waived"].) For these reasons, we conclude KHSD has forfeited the argument that there was some other process available to Wyatt to challenge the IA findings.

### D. *Interpretation of the 2018 Amendments to Penal Code Sections 832.7 and 832.8*

#### 1. Principles of Statutory Construction

" ' " 'When we interpret a statute, "[o]ur fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 917 (*Becerra*).)

"As a court, we have a 'limited role in the process of interpreting enactments from the political branches of our state government.' [Citation.] Our role is 'not to establish policy' [citation] or to question legislative policy choices [citation]. Rather, 'we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law,

---

[17] *Murden*, *supra*, 160 Cal.App.3d 302 did not involve Penal Code sections 832.7 or 832.8, nor Government Code sections 3304, 3304.5 or 6250 et seq.

" ' "whatever may be thought of the wisdom, expediency, or policy of the act." ' " ' " (*Becerra*, *supra*, 44 Cal.App.5th at p. 917.)

In *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272 (*Copley Press*), the California Supreme Court considered "the extent, if any, to which the [CPRA] … requires disclosure to a newspaper publisher of records of the County of San Diego Civil Service Commission … relating to a peace officer's administrative appeal of a disciplinary matter." (*Id*. at p. 1279.) In examining the issue, the high court had occasion to examine former Penal Code sections 832.5, 832.7, and 832.8 as they existed prior to the 2018 amendments. (*Copley Press*, at p. 1298.)

In arguing for disclosure of peace officer disciplinary records, the plaintiff news agency in *Copley Press* argued on public policy grounds that " 'public scrutiny of disciplined officers is vital to prevent the arbitrary exercise of official power by those who oversee law enforcement and to foster public confidence in the system, especially given the widespread concern about America's serious police misconduct problems.' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1298.) In response, our state high court noted that "competing policy considerations … may favor confidentiality, such as … protecting … peace officers from publication of frivolous or unwarranted charges, and maintaining confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct. [Citations.] In enacting and amending [now former] sections 832.5, 832.7, and 832.8, the Legislature, …, made the policy decision 'that the desirability of confidentiality in police personnel matters *does* outweigh the public interest in openness.' " (*Id.* at p. 1298, fn. omitted.) Our high court wrote: "[I]t is for the Legislature to weigh the competing policy considerations. As one Court of Appeal has explained in rejecting a similar policy argument: '[O]ur decision … cannot be based on such generalized public policy notions. As a judicial body, … our role [is] to interpret the laws as they are written.' " (*Id*. at p. 1299, fn. omitted.)

25.

"[A] court's 'overriding purpose' in construing a statute is 'to give the statute a *reasonable* construction conforming to [the Legislature's] intent [citation], keeping in mind that "the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." ' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1299, fn. 22.)

## 2. Legislative History of the 2018 Amendments to Penal Code Sections 832.7 and 832.8

As part of its initial filings on appeal, KHSD requested we take judicial notice of various Legislative history documents related to Senate Bill 1421. We grant the request.[18]

In introducing Senate Bill 1421 to the Legislature, the author of the bill indicated it was intended to "benefit[] law enforcement and the communities they serve by helping build trust" and will "promote better policies and procedures that protect everyone." (Sen. Com. on Pub. Safety, Off. of Sen. Floor Analyses, Analysis of Sen. Bill 1421 (2017–2018 Reg. Sess.) Apr. 17, 2018, p. 7.) In enacting Senate Bill 1421, the Legislature found and declared:

> "(a) Peace officers help to provide one of our state's most fundamental government services. To empower peace officers to fulfill their mission, the people of California vest them with extraordinary authority – the powers to detain, search, arrest, and use deadly force. Our society depends on peace officers' faithful exercise of that authority. Misuse of that authority can lead to grave constitutional violations, harms

---

[18] We also grant KHSD's request that we judicially notice the decision *Felicijan v. Santa Ana Educators Assn.* (Mar. 10, 2009) PERB Decision No. 2008 (*Felicijan*), rendered by the California Public Employment Relations Board. We deny, however, KHSD's request to judicially notice that 39 months from May 13, 2017, is August 13, 2020, on grounds it is irrelevant to our disposition. (*AL Holding*, *supra*, 75 Cal.App.4th at p. 1313, fn. 2 ["court must decline to take judicial notice of material that is not relevant"].)

26.

to liberty and the inherent sanctity of human life, as well as significant public unrest.

"(b) The public has a right to know all about serious police misconduct …. Concealing crucial public safety matters such as officer violations of civilians' rights, …, undercuts the public's faith in the legitimacy of law enforcement, makes it harder for tens of thousands of hardworking peace officers to do their jobs, and endangers public safety." (Sen. Bill No. 1421, approved by Governor, Sept. 30, 2018, Legis. Counsel's Digest (2017–2018 Reg. Sess.) Stats. 2018, ch. 988, § 1.)

"[Senate Bill] 1421 opens police officer personnel records in very limited cases, … allowing local law enforcement agencies and law enforcement oversight agencies to provide greater transparency around only the most serious police complaints. Additionally, [Senate Bill] 1421 endeavors to protect the privacy of personal information of officers and members of the public who have interacted with officers." (Sen. Com. on Pub. Safety, *supra*, p. 8.) In enacting [Senate Bill] 1421, the Legislature attempted to strike an appropriate balance between the competing considerations of peace officer privacy and public disclosure of peace officer misconduct. (Sen. Com. on Pub. Safety, at pp. 8–9.)

In support of its appeal, KHSD quotes from various reports and analyses prepared by the Legislature, as follows: " '[Senate Bill 1421] permits inspection of specified peace … officer records pursuant to the [CPRA]. This bill provides that records related to reports, investigations, or findings may be subject to disclosure if they involve the following: … incidents relating to sustained findings of dishonesty by a peace officer.' " (Sen. Com. on Pub. Safety, *supra*, at p. 2.) " 'Release of [peace-officer] personnel records contemplated in this bill is precisely the kind of disclosure which will promote public scrutiny of, and accountability for, law enforcement.' " (Assem. Com. on Pub. Safety, Rep. on Sen. Bill 1421 (2017–2018 Reg. Sess.) June 26, 2018, p. 7.)

"[T]he legislative intent behind Senate Bill 1421 was to provide transparency regarding instances of an officer's use of significant force and sustained findings of

27.

officer misconduct by allowing public access to officer-related records maintained either by law enforcement employers or by any state or local agency with independent law enforcement oversight authority." (*Becerra*, *supra*, 44 Cal.App.5th at p. 921.)

### 3. Analysis

For convenience, we reiterate the following undisputed facts. The findings made as part of the IA investigation were described in an IA findings document as "sustained findings," yet KHSD never notified Wyatt that the IA findings had been made, and Wyatt was not provided an opportunity to be heard in order to challenge the findings. That is, Wyatt was not provided an opportunity for an administrative appeal pursuant to Government Code sections 3304 or 3304.5, or otherwise. Approximately one and one-half years later, KHSD notified Wyatt of the CPRA requests. The CPRA requests sought documents which were newly made disclosable pursuant to the CPRA requests. KHSD notified Wyatt it had identified documents in his personnel files responsive to the CPRA requests and, unless he provided KHSD with a court order prohibiting disclosure, the documents so identified would be produced to the requesting parties. The subject records include the IA findings document and related documents.

At the August 2, 2019, hearing on Wyatt's amended petition, counsel for KHSD explained the lack of notice and opportunity for an administrative appeal: "In this instance, there was an investigation, obviously, and a finding, so the investigation has to be closed within a year, but the notice to the officer doesn't take place necessarily until a decision on discipline has been filed because – just because there's a sustained finding, doesn't necessarily mean that discipline will follow. Sometimes, based on timing purposes or other factors, an employer will notify the officer that there's been a sustained finding but no discipline will follow. That's an option of a department. Right or wrong, that's an option…."

Counsel for KHSD continued: "There are reasons why as soon as the investigation was concluded that maybe an officer wouldn't have been noticed. There are

oftentimes that officers are on leave for various reasons, including medical.  Sometimes it's not necessarily pragmatic especially if someone is an officer – situation may involve where an officer is out on medical leave related to a psychiatric claim, and any notice of discipline may result in exaggerating or contributing to that condition.  And so employers will wait to decide what is going to happen, not necessarily make a decision on discipline until the officer returns.  Those are instances of things that could occur of [*sic*] why there may be a delay between the conclusion of an investigation and a notice to an officer.  And I'm speaking in generality so that I don't speak specifically to this case."

Counsel for KHSD stated, "So this – potentially the investigation is a part of any officer's file, regardless of the discipline that follows which is, I think, is the distinction that we need to make here.  There is an investigation and the right to follow that investigation, and then there's the rights of the officer under [the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.)], which relates to discipline and the right to appeal and respond, etcetera.  And there is a distinct line under the Government Code under [section] 3300."

Distilling KHSD's argument to its essence, an "administrative appeal pursuant to Sections 3304 and 3304.5," as contemplated under subdivision (b) of Penal Code section 832.8, is only applicable when the law enforcement employer intends to seek discipline against an officer.  Absent an intent to impose discipline on an officer, a law enforcement employer is not required to provide that officer with notice of "sustained" findings and, absent such an intent, no right to an administrative appeal pursuant to Sections 3304 and 3304.5 arises.  (See Gov. Code, § 3304, subd. (b) ["No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal"].)  Because KHSD did not consider Wyatt actively employed by KHSD at the time the IA investigation was

29.

completed and the alleged "sustained" findings were made, KHSD argues it could not impose any punitive action or denial of promotion which would give Wyatt the right to an administrative appeal. Consequently, KHSD asks that this court interpret Penal Code sections 832.7 and 832.8, to provide that, in such cases, an "opportunity for administrative appeal pursuant to [Government Code] Sections 3304 and 3304.5," is unnecessary to constitute a "sustained" finding. (Pen. Code, § 832.8, subd. (b).) KHSD further argues that affirmance of the trial court's judgement would yield an absurd result contrary to Legislative purpose of Senate Bill 1421. We disagree.

We accept KHSD's argument that an administrative appeal under Government Code sections 3304 and 3304.5 is not available to a peace officer unless the employing agency intends to impose discipline on the officer or deny the officer promotional opportunities "on grounds other than merit." (Gov. Code, § 3304, subd. (d).) Moreover, case law has held that this administrative appeal procedure is not available to a peace officer who has voluntarily resigned from his employment.[19] (*Haight*, *supra*, 228 Cal.App.3d at pp. 417–418.) However, neither proposition resolves the question of whether the subject records were subject to disclosure under the 2018 amendments to Penal Code section 832.7.

After KHSD filed its opening brief, it notified this court of two new cases that had been decided in 2021 relating to Penal Code sections 832.7 and 832.8 – *Collondrez v. City of Rio Vista* (2021) 61 Cal.App.5th 1039 (*Collondrez*) and *Ventura County Deputy Sheriffs' Assn. v. County of Ventura* (2021) 61 Cal.App.5th 585 (*Ventura*). We discuss *Collondrez* below.[20]

In *Collondrez*, a police officer with the City of Rio Vista (City) came under an IA investigation which resulted in findings of misconduct against the officer. (*Collondrez*,

---

[19] See footnote 5, *ante*.

[20] We address *Ventura*, *supra*, 61 Cal.App.5th 585 in a subsequent section of this opinion.

*supra*, 61 Cal.App.5th at pp. 1044–1045.)  The officer was notified the City intended to discipline him as a result of the findings.  (*Id*. at p. 1045.)  The officer appealed and an administrative hearing pursuant to Government Code sections 3304 and 3304.5 was scheduled.  (*Ibid*.)  Soon thereafter, however, the officer and the City entered into a settlement agreement under which the "City agreed to pay [the officer] $35,000, and [the officer] agreed to resign …, release the City from any claims arising prior to the settlement, and not seek future employment with the City."  (*Ibid*.)  As a result, the administrative appeal was withdrawn.  (*Id*. at p. 1054.)

As in this case, upon the passage of Senate Bill 1421, the City received various CPRA requests for records made newly disclosable by the 2018 amendments. (*Collondrez*, *supra*, 61 Cal.App.5th at p. 1045.)  The City complied with the CPRA requests after giving the officer notice of some, but not all, of the requests in violation of the parties' settlement agreement.  (*Ibid*.)  The officer then sued the City for breach of contract and invasion of privacy, among other causes of action.  (*Ibid*.)

The officer argued, among other things, that the findings at issue were not "sustained" as defined in Penal Code section 832.8, subdivision (b) because no final determination had been rendered in the administrative appeal.  (*Collondrez*, *supra*, 61 Cal.App.5th at pp. 1051–1052.)  The *Collondrez* court disagreed.  It wrote:  "[I]f the Legislature intended to so limit the new disclosure requirements to disciplinary cases that have been pursued through a full administrative appeal, it could easily have said so. Moreover, construing [Penal Code] section [832.8] to require a *completed* administrative appeal would render superfluous the Legislature's explicit requirement that the officer was provided an *opportunity* to appeal."  (*Id*. at p. 1053.)

The facts of *Collondrez* are materially different from those in the case at bar.  The officer in *Collondrez* initiated an appeal but withdrew it as part of a bargained-for settlement.  The withdrawal of the appeal was a natural (and presumably necessary) consequence of the officer's bargain with the City.  Here, KHSD never provided Wyatt

31.

notice of the "sustained" IA findings (although Wyatt learned of them approximately five months later) and Wyatt never had an opportunity for an administrative appeal.

From the plain text of Penal Code sections 832.7 and 832.8, as amended by Senate Bill 1421, we conclude protection of peace officer privacy in their personnel files and related records continued to be an important purpose of the legislation. Thus, the statement in *Copley Press* that "the Legislature, …, made the policy decision 'that the desirability of confidentiality in police personnel matters *does* outweigh the public interest in openness' " continued to have application with respect to matters not excepted from protection under Senate Bill 1421. (*Copley Press*, *supra*, 39 Cal.4th at p. 1298, fn. omitted.) We conclude the statement in *Copley Press*, that "competing policy considerations … may favor confidentiality, such as … protecting peace officers from publication of frivolous or unwarranted charges, and maintaining confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct" remained a valid concern under Senate Bill 1421. (*Ibid.*)

Thus, the statutes under consideration continue to protect peace officer privacy interests except for certain records including those that relate to "sustained" findings involving certain types of officer misconduct. It seems beyond dispute that the alleged "sustained" findings contained in the IA findings document do not fit precisely within the plain language of Senate Bill 1421 since Wyatt was never provided an opportunity to challenge the findings by way of an administrative appeal.

From the plain text of Penal Code section 832.8, as amended by Senate Bill 1421, we discern a Legislative intent to afford a peace officer certain due process rights (i.e., an opportunity for an administrative appeal pursuant to Gov. Code, §§ 3304 & 3304.5) before certain sustained findings and related documents may be released pursuant to a CPRA request. However, due process rights may not be applicable to particular situations in which findings are made but no disciplinary action is contemplated. Such

32.

circumstances raise questions about the implications of lack of notice and opportunity for administrative appeal that collaterally may impact an employee.

In our review of the legislative history for Senate Bill 1421, we have found nothing indicating the Legislature considered the situation where alleged "sustained" findings were made by a law enforcement employer following a peace officer's separation of employment through resignation, constructive termination, or otherwise. We cannot say the legislative purpose of Senate Bill 1421 is in any way violated by a construction that holds the subject records are not within the definition of "sustained" findings and related documents. Had the Legislature considered such a situation, it is plausible the Legislature might have provided that such records should be subject to disclosure in response to a CPRA request. It is equally plausible, however, the Legislature would have found policy considerations warrant continued protection of such documents to protect an officer's privacy interests due to the lack of notice and an opportunity to appeal the findings – as argued by Wyatt. The Legislature could also have determined that the requirement of an appeal process was necessary to "maintain[] confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct." (*Copley Press*, *supra*, 39 Cal.4th at p. 1298.) We cannot conclude that the judgment, if affirmed, yields an absurd result.

To the extent this case exposes circumstances not addressed by the Legislature in Senate Bill 1421, it is for the Legislature, not the courts, to make the relevant policy determinations necessary to achieve the appropriate balance between protecting a peace officer's privacy interest while at the same time providing public disclosure of allegations or sustained findings related to officer conduct and misconduct. (*Becerra*, *supra*, 44 Cal.App.5th at p. 917; *Copley Press*, *supra*, 39 Cal.4th at p. 1299.) In the next section, we discuss recent amendments to Penal Code section 832.7 which address the issue.

We conclude the subject records are not subject to disclosure under the 2018 amendments to Penal Code section 832.7 and 832.8

33.

## IV. Senate Bill 16 (2021–2022 Reg. Sess.) § 3

In 2021, the Legislature made additional amendments to Penal Code section 832.7. (Assem. Bill No. 474 (2021–2022 Reg. Sess.) § 339; Sen. Bill 16 (2021–2022 Reg. Sess.) § 3; Sen. Bill No. 2 (2021–2022 Reg. Sess.) § 5.5.)  In particular, upon enactment of Senate Bill 16, subdivision (b)(3) of Penal Code section 832.7 was amended to provide, in relevant part:  "Records that shall be released pursuant to this subdivision also include records relating to an incident specified in paragraph (1) in which the peace officer or custodial officer resigned before the law enforcement agency or oversight agency concluded its investigation into the alleged incident."  (Pen. Code, § 832.7, subd. (b)(3).)

### A. *Consideration of Additional Matters on Rehearing*

On rehearing of this appeal, KHSD argues "through [Senate Bill] 16 the Legislature, among other things sought to close a loophole where the resignation of a law enforcement officer could result in permanently shielding records from disclosure.  These changes all track a legislative trend and intent to presumptively favor disclosure of records delineated by Penal Code section 832.7."  KHSD further argues that Wyatt "resigned from his position by requesting placement on the District's 39-month re-employment list" before KHSD had completed its investigation, and that the above referenced amendment to Penal Code section 832.7 upon enactment of Senate Bill 16 "support[s] the conclusion that the [s]ubject [r]ecords are now, regardless of any outcome pre-[Senate Bill] 16 enactment subject to disclosure under the [C]PRA."

The legislative history for Senate Bill 16 indicates the Legislature was concerned that "[d]espite changes to the law [i.e., Senate Bill 1421], agencies across the state have taken actions that have delayed or denied the public access to records for which disclosure should be mandated."  (Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Sen. Bill 16 (2021–2022 Reg. Sess.), as amended Aug. 30, 2021, p. 5.)  Senate Bill 16 "responds to the pattern of law enforcement agencies refusing to comply with provisions of existing law that make specified law enforcement personnel records

subject to public disclosure." (Assem. Com. on Judiciary, Rep. on Sen. Bill 16 (2021–2022 Reg. Sess.) as proposed to be amended, July 6, 2021, p. 6.) Senate Bill 16 "ensures that officers with a history of misconduct can't just quit their jobs, keep their records secret, and move on to continue bad behavior in another jurisdiction." (Assem. Com. on Judiciary, p. 6; Sen. 3d reading, Analysis of Sen. Bill 16 (2021–2022 Reg. Sess.) as amended Aug. 30, 2021, p. 3.) Supporters of Senate Bill 16 contend, " '[t]his is critically important because this is a major loophole that peace officers often use to avoid accountability. Officers in these circumstances usually quit their job and get hired by another law enforcement agency.' " (Assem. Com. on Judiciary, p. 12.)

KHSD notes Senate Bill 16 was intended "to promote public scrutiny of law enforcement through access to public records" and that "[r]esignation is no longer a shield for peace officers to use to prevent the disclosure of records produced by an investigation." KHSD contends that Wyatt "claim[s] that the records created as part of [the IA] investigation must be held in secret for an undetermined amount of time. This stance runs directly counter to the intent of [Senate Bill] 16, [Senate Bill] 1421] and the [C]PRA all of which carry a broad mandate for the disclosure of records."

KHSD argues that Wyatt's election to be placed on the 39-month reemployment list pursuant to Education Code section 45192 "constitutes a separation of employment unless or until such time as the employee is medically able to return and there is a vacant position for which the employee is qualified." KHSD acknowledges the trial court did not determine the "legal effect of [Wyatt's] departure from [KHSD]" and that "there are no factual findings [from the trial court] on point." However, KHSD contends the parties' settlement of the wrongful termination and whistleblower retaliation lawsuits should "put this Court at ease that an opinion here will not have collateral impact on other matters."

Wyatt agrees that the wrongful termination and whistleblower retaliation lawsuits did not result in any factual determinations but contends there are no facts this court can

35.

judicially notice that will permit this court to "make a conclusion about [his] employment status." Wyatt also states his worker's compensation claim "also remains unresolved at this time." Wyatt argues KHSD "has incentive to publicly besmirch [him] given [his] accusations of criminal conduct by [KHSD]" and that KHSD "cannot be the authority on whether individual officers resigned from employment with [KHSD] or were constructively terminated."

Wyatt further contends "the issue over constructive termination versus resignation would need to be determined by a jury, as it is a triable issue of material fact" and "[w]hen the parties settled … those issues were left unresolved." Wyatt argues "[t]he determination that the 'reasonable employee' would have been compelled to quit is essentially a jury function." He contends this "is a question that necessitates testimony, witnesses, presentation of correspondence, presentation of doctors' opinions, and cannot be resolved by mere pleadings and written documents. There are credibility issues that need to be resolved .…"

Moreover, Wyatt contends "the [L]egislature has opened the door to peace officer employers to generate their own records of dishonesty to release if an individual peace officer acts as a whistleblower and resigns under the hostile conditions that are subsequently created by their employer. Under the new statutory scheme, the resignation of a peace officer who encounters a reduction in job responsibilities, reassignment to menial or degrading work, badgering, and/or harassment or humiliation by the employer calculated to encourage the employee to resign, opens that individual up to a release of records of dishonesty created by the same employer." Wyatt contends this leads to "an absurd result, where a whistleblower peace officer cannot resign from its corrupt employer without retaliation based on their resignation."

We appreciate the parties' respective concerns in this case.

For the reader's convenience, we reiterate the relevant provision of Education Code section 45192. It provides, in part: "When all available leaves of absence, paid or

unpaid, have been exhausted and if the employee is not medically able to assume the duties of his or her position, the employee shall, if not placed in another position, be placed on a reemployment list for a period of 39 months. When available, during the 39-month period, the employee shall be employed in a vacant position in the class of the employee's previous assignment over all other available candidates except for a reemployment list established because of lack of work or lack of funds, in which case the employee shall be listed in accordance with appropriate seniority regulations." (Ed. Code, § 45192, subd. (g).)

KHSD relies on *Felicijan*, *supra*, PERB Decision No. 2008 (*Felicijan*) for the proposition that once a person is placed on the 39-month reemployment list, they are no longer considered an employee and their employment has been terminated. In *Felicijan*, the Public Employment Relations Board (PERB) considered whether the complainants had a right to representation by the respondent Santa Ana Educators Association (Association) "over inappropriate materials contained in their personnel files." (*Id*. at p. 1.) Although the decision involves Education Code section 44978.1, rather than Education Code section 45192, the PERB referred to section 45192 in its decision. (*Felicijan*, at pp. 7–8.) It noted that Education Code section 45192 "provides that when a person on the reemployment list is medically able to return to work <u>and</u> a vacant position exists, the person will have a rehire preference over other candidates. Thus, the person is not guaranteed reinstatement when he or she is cleared to return to work, but must apply for an open position, if one exists. Consistently, with this language, courts have held that placement of a classified employee on the section 45192 39-month reemployment list terminates the person's employment. [Citations.] [P]lacement of a classified employee on a 39-month reemployment list pursuant to Education Code section 45195 ends the individual's employment." (*Felicijan*, at pp. 11–12, fn. omitted.)

*Felicijan* does not aid in resolving the issue before this court. Wyatt contends he was constructively discharged from his employment and, based thereon, filed the

wrongful termination lawsuit against KHSD. "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1244–1245.) Whether Wyatt was technically an employee or not due to his decision to be placed on the 39-month reemployment list does not answer the question of whether he was constructively discharged.

KHSD contends: "While [Wyatt] asserts that the Trial Court must examine a plethora of evidence regarding [Wyatt's] employment status … [Wyatt] had ample opportunity to seek to introduce evidence regarding this point and simply chose not to" and that "by misstep or intentional strategy he chose to pass on introducing evidence [on the resignation issue] before the [t]rial [c]ourt, forfeiting the issue altogether." We disagree.

The trial court did not consider whether Wyatt resigned from his employment or was constructively discharged and expressly indicated that it was expressing no opinion in that regard. At the time the trial court made its rulings, Senate Bill 16 was not in effect and the resignation issue did not have the same relevance it now has.

Neither this court nor the trial court has been provided sufficient information concerning the circumstances of Wyatt's separation from employment from KHSD to make a determination of whether Wyatt was constructively terminated. From the dockets which were the subject of KHSD's request for judicial notice, it appears that Wyatt's wrongful termination lawsuit was filed on March 17, 2017, and his whistleblower retaliation lawsuit was filed on November 8, 2017. Neither Senate Bill 1421 nor Senate Bill 16 had been enacted by either of those dates. (Stats.2018, c. 988 (Sen. Bill 1421); Stats.2021. c. 402 (Sen. Bill 16), § 3.) So, it does not appear that Wyatt's other lawsuits were an attempt to circumvent the effect of the new laws. Finally, although we know the

38.

parties settled these lawsuits, we do not know the terms of the settlement and whether matters contained therein impact the question at hand.

Under these circumstances, we know of no reason that Wyatt should be precluded from presenting evidence to a trier-of-fact as to whether he was constructively terminated or effectively resigned. However, we limit our decision to the peculiar facts of this case.

Because we take no position on whether Wyatt resigned from the KHSD police department, was constructively terminated from said employment, or separated from his employment with KHSD under other circumstances, we are unable to determine whether a different result would obtain under current Penal Code section 832.7.

Given the change in the law, the judgment and writ issued by the trial court must be modified. Specifically, the judgment and writ should be modified to limit the injunction to CPRA requests received prior to January 1, 2022, the effective date of the 2021 amendments. Whether the 2022 CPRA records request or future CPRA requests, if any, may reach the subject records is an issue upon which we express no opinion. The existing record is insufficient to reach a determination with respect to any such CPRA requests.

## V.    Mooted Issues

At issue in *Ventura* was whether the 2018 amendments to Penal Code sections 832.7 and 832.8 applied retroactively to permit the production of records that predate the amendments. (*Ventura*, *supra*, 61 Cal.App.5th at pp. 589–590.) In light of our decision that the subject records are not subject to disclosure under the 2018 amendments, and that the factual record is insufficient to determine whether the result would be any different under the 2021 amendments, we need not consider whether Senate Bill 1421 or Senate Bill 16 applies to documents predating their enactment.

## DISPOSITION

The trial court's order and subsequent judgment granting Wyatt injunctive relief is affirmed, in part, and reversed, in part. We remand this matter to the trial court for

39.

further proceedings consistent with this opinion.  Specifically, the peremptory writ should be recalled, and both the writ and the judgment should be modified to limit the injunction such that it prohibits disclosure of the subject records only in response to those CPRA requests received by KHSD prior to January 1, 2022.  To the extent KHSD may receive future CPRA requests on or after January 1, 2022, seeking disclosure of the subject records, neither this opinion nor the judgment or writ issued in the trial court will take a position on whether the subject records should or should not be disclosed.

In the interests of justice, the parties shall bear their own costs on appeal.


POOCHIGIAN, J.

WE CONCUR:


HILL, P. J.


FRANSON, J.


40.